## State of Vermont v. Mark A. Maguire

[498 A.2d 1028]

No. 84-419

Present: **Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed June 7, 1985

*Shelley A. Hill,* Windsor County Deputy State's Attorney, and *Joanne Baltz,* Law Clerk (On the Brief), White River Junction, for Plaintiff-Appellee.

*Peter H. Carter* of *Johnson, Meyers & Hershenson,* Norwich, for Defendant-Appellant.

**Gibson, J.** This is an interlocutory appeal by defendant, following the trial court's denial of his motion to suppress evidence taken from his apartment pursuant to a search warrant. The trial court granted defendant's motion for interlocutory appeal and certified the following question:

> Does the Search Warrant issued by this Court on May 4, 1984, and specifically the Affidavit in Support thereof, meet the constitutional requirements of the Fourth and Fourteenth Amendments of the U.S. Constitution and Article Eleven of the Vermont Constitution?

Defendant raises three claims: (1) the affidavit supporting the warrant fails to establish probable cause, in violation of the Fourth Amendment to the United States Constitution; (2) the Vermont Constitution contains more stringent requirements for search warrants than are imposed by federal law, and these requirements were not met by the authorities in this case; and (3) the information in the affidavit was too stale to support issuance of a warrant. We conclude that the search warrant was issued in accordance with constitutional requirements.

The relevant facts are as follows. On May 4, 1984, a Vermont State Police officer prepared an affidavit and obtained a warrant to search defendant's Windsor apartment for cocaine and assorted evidence of cocaine dealing. The search was executed the following day. The affidavit recited the officer's years of drug enforcement experience and stated that two informants had de-

scribed sales of cocaine by defendant during the past year or more. The affidavit then referred to a third informant, continuing as follows:

> Within the past four days a reliable informant told me it had gone to the Mark Maguire apartment at 17 Main Street in Windsor. While at the apartment it saw an amount of cocaine in the apartment as well as cocaine paraphernalia. It also saw a Miller Beer mirror with cocaine dust on it which indicates it was being used to cut and process cocaine.
>
> I believe the confidential informant to be truthful and reliable based on the following facts:
>
> 1. The Confidential Informant has given other State Police agencies reliable drug information and has made controlled purchases of regulated drugs.
>
> 2. The Confidential Informant has introduced an undercover police officer to known drug dealers within the past 3 months.
>
> 3. I have personally talked to the State Police Officer using the Confidential Informant from Massachusetts for drug buys and he told me all the information they have obtained from the Confidential Informant has been reliable. The State Police Officer also told me the information from the Confidential Informant has led them out of Massachusetts and caused them to verify information through D.E.A. (Drug Enforcement Administration) and that D.E.A. told him the Confidential Informant's information was reliable.
>
> 4. The Confidential Informant has given me drug information on four (4) residences in the Bethel State Police area within the past few months. As a result of the information four search warrants were obtained and served, resulting in numerous arrests for possession of cocaine, marijuana and hashish and other regulated drugs, as well as the seizure of the drugs.
>
> 5. Two of the search warrants above have [been] upheld as of this date.

Each of defendant's claims on appeal challenges the adequacy of this affidavit.

# I.

Defendant first claims the affidavit is insufficient, under federal law, to support the judge's finding of probable cause to issue the warrant. Defendant asserts that the affidavit fails to satisfy the trustworthiness requirements of *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). Citing J. Hall, Search and Seizure (1982 and Supp. 1984), defendant argues that there is a two-pronged test, namely, a "basis of knowledge" prong (*Aguilar*) and a "veracity" prong (*Spinelli*), both of which must be satisfied before a magistrate or judge may consider hearsay information in an affidavit.

The State points out that the test for issuance of search warrants was changed by the United States Supreme Court's decision in *Illinois* v. *Gates*, 462 U.S. 213, 230-39 (1983), which expressly rejected the "two-pronged" analysis in favor of a test in which the magistrate or judge must look at the totality of the circumstances to determine cause for issuing the search warrant.

Defendant concedes that *Gates* "relaxed" the two-pronged analysis and adopted a "totality of the circumstances" standard; however, he claims that, because *Gates* requires that "*some* facts bearing on [the] two particular issues be provided," citing *Gates*, *id.* at 231 n.6 (emphasis in original), it is necessary that the veracity of each informant be established. Defendant asserts that the affidavit fails to identify to which of the three informants its detailed reliability information pertains; thus, he claims, because there is no admissible veracity information, or personal corroboration by the officer, the affidavit is insufficient and fails the veracity prong of the "*Aguilar-Spinelli-Gates* test." We disagree.

■ At the outset, we note that the United States Supreme Court has clearly abandoned the two-pronged test of *Aguilar-Spinelli* in favor of a totality-of-the-circumstances approach. The Court has plainly stated, "We did not merely refine or qualify the 'two-pronged test.' We rejected it as hypertechnical. . . ." *Massachusetts* v. *Upton*, 466 U.S. 727, 732, 104 S. Ct. 2085, 2087 (1984), *on remand*, 394 Mass. 363, 476 N.E.2d 548 (1985) (suppressing evidence on state statutory and constitutional grounds).

Earlier, the Court had admonished appellate courts that they "should not invalidate [a] warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner," *United States* v. *Ventresca*, 380 U.S. 102, 109 (1965), because affidavits

"are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *Id.* at 108. This Court has adopted such a policy. *State* v. *Moran,* 141 Vt. 10, 16, 444 A.2d 879, 882 (1982).

Since it is not the function of appellate review to make a de novo determination of probable cause, a magistrate's determination of probable cause is entitled to " 'great deference.' " *Gates, supra,* 462 U.S. at 236 (quoting *Spinelli, supra,* 393 U.S. at 419); see also *Upton, supra,* 466 U.S. at 733, 104 S. Ct. at 2088. In taking this approach, the United States Supreme Court has recognized that when courts subject affidavits to too strict scrutiny, police may be encouraged to resort to warrantless searches, in hopes of relying on consent or some other exception to the warrant requirement. See *Upton, supra,* 466 U.S. at 733 n., 104 S. Ct. at 2088 n. "A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Id.* at 733, 104 S. Ct. at 2088. In addition, the Court is disposed to give the benefit of the doubt in a close case to " 'the preference to be accorded warrants.' " *Id.* at 734, 104 S. Ct. at 2089 (quoting *Ventresca, supra,* 380 U.S. at 109).

The Court has summarized the functions of the issuing magistrate and the appellate court as follows:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a *"substantial basis* for . . . conclud[ing]" that probable cause existed.

*Gates, supra,* 462 U.S. at 238-39 (emphasis added) (quoting *Jones* v. *United States,* 362 U.S. 257, 271 (1960)); see also *Upton, supra,* 466 U.S. at 728, 104 S. Ct. at 2085-86.

Although defendant argues that the affidavit fails to identify to which of the three informants its information on reliability pertains, the court below expressly concluded that the affidavit's detailed "veracity" information related to the third informant, the only informant who provided substantial information and whose

reports it immediately followed. We believe this is a fair reading of the affidavit.

In considering whether the judge had a substantial basis for finding probable cause, we also note that the officer who applied for the warrant was experienced in drug investigations and had previously been given reliable information by the informant, resulting in at least two valid searches. The officer had further verified the informant's reliability through experiences of other police agencies, both in and out of state.

■ Giving due deference to the magistrate's interpretation, *Upton, supra,* 466 U.S. at 733, 104 S. Ct. at 2088; *Gates, supra,* 462 U.S. at 237, we conclude that there was a substantial basis, in the totality of the circumstances, for the magistrate's finding of probable cause to search.

## II.

Defendant also asks this Court independently to adopt the *Aguilar-Spinelli* approach (abandoned, as we have noted, by the United States Supreme Court in *Gates*) as part of the Vermont Constitution, Ch. I, Art. 11.

Although defendant cited Article 11 in the introductory paragraph of his trial court memorandum, that memorandum failed to discuss the Vermont Constitution in any respect. Understandably, the trial court did not address defendant's state constitutional claim in denying his motion to suppress. In stipulating for interlocutory appeal of the court's ruling, the parties agreed that "defendant's motions and memoranda question the validity of the search warrant and whether the supporting affidavit supplies constitutionally sufficient probable cause for the issuance thereof."

Aside from arguing the perceived merits of the *Aguilar-Spinelli* approach over those of *Gates*, defendant provides no analysis of the Vermont Constitution in comparison with the federal constitution and no showing of extraordinary circumstances that would justify our addressing this issue for the first time on appeal. Accordingly, we shall not consider the issue herein. See *State* v. *Taylor,* 145 Vt. 437, 439, 491 A.2d 1034, 1035 (1985) (declining to address federal and state constitutional issues not adequately raised or briefed).

## III.

Finally, defendant presents three arguments that the information on which the warrant was based was stale. Citing *Sgro* v. *United States*, 287 U.S. 206, 210 (1932), defendant first claims that, because of "strict . . . requirements" that the precise time of observation appear in the affidavit, the warrant was defective. Contrary to defendant's contention, however, *Sgro* construed a federal statute to require only that an affidavit recite "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Id.* Even if *Sgro* in fact supported defendant's position, any such rule would have been superseded by the totality-of-the-circumstances standard of *Gates*; the affidavit satisfied that standard.

Defendant next argues that the "disposable nature of the items to be seized" rendered the warrant stale. As the court below concluded, the affidavit indicated that defendant's illicit enterprise was of a protracted and continuous nature and could have been operating for as long as a year. Under all of the circumstances before him, the judge was justified in concluding there was probable cause to believe that the contraband and evidence seen within the prior four days would still be found in defendant's apartment. *Gates, supra*, 462 U.S. at 238.

Finally, defendant focuses upon the sentence: "Within the past four days a reliable informant told me it had gone to the Mark Maguire apartment at 17 Main Street in Windsor." When the magistrate read the affidavit, he interpreted it to mean that the informant's "first hand observation . . . was made within the past four days." However, defendant interprets the sentence to mean that, within the previous four days, informant had transmitted information of indeterminate age to the officer. We agree that the sentence is subject to more than one interpretation; however, we are constrained to give due deference to the interpretation of the issuing magistrate, *Upton, supra; Gates, supra*, and we are unable to say that his interpretation is unreasonable and erroneous as a matter of law.

Because of the insufficient raising of the Vermont constitutional claim, the certified question is rephrased as follows: Do the search warrant and supporting affidavit meet the constitutional requirements of the Fourth and Fourteenth Amendments to the United States Constitution? Our answer is in the affirmative.

*Case remanded for further proceedings.*

**Allen, C.J.,** dissenting. I do not agree that the words "Within the past four days a reliable informant told me it had gone to the Mark Maguire apartment . . . ." may reasonably be interpreted to mean that the informant had been in Maguire's apartment within the past four days. "Deference to the magistrate . . . is not boundless." *United States* v. *Leon,* 468 U.S. 897, 914, 104 S. Ct. 3405, 3417 (1984). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause . . . ." *Illinois* v. *Gates,* 462 U.S. 213, 239 (1983). Without any information at all concerning the time within which an observation was made, a magistrate is unable to determine the likelihood that evidence is still present in the defendant's apartment. Therefore, probable cause is absent. *King* v. *State,* 410 So. 2d 586, 586 (Fla. Dist. Ct. App. 1982) (affidavit stating "within the last six days [affiant] met with a confidential and reliable informant who advised [affiant] that . . . he observed one Diana King rolling hand-made cigarettes filled with what [the affiant] believed to be cannabis" contained no indication as to when the informant actually observed the incident); *Commonwealth* v. *Tolbert,* 492 Pa. 576, 578-79, 424 A.2d 1342, 1343 (1981) (affidavit stating "On 12-1-75 received information from a reliable informant . . . ." held insufficient). But see *State* v. *Williams,* 49 N.C. App. 184, 270 S.E.2d 604 (Ct. App. 1980) (magistrate could infer observation was recent where affidavit stated within past 36 to 48 hours informant had contacted affiant and said he had observed hashish in defendant's apartment), *appeal dismissed, review denied,* 301 N.C. 726, 276 S.E.2d 287 (1981) (criticized by W. LaFave, Search and Seizure § 3.7, at 693 n.52 (1978 & Supp. 1985)). Accordingly, I would reverse.*

---

* Under *United States* v. *Leon, supra,* suppression of the illegally seized evidence at trial would not be required under the Fourth Amendment to the United States Constitution if the police acted in good faith reliance upon a warrant issued by a detached and neutral magistrate. Because this issue was neither briefed nor argued under either the United States or Vermont Constitutions, its applicability to the present case is not addressed.